UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
TRACY PERSAUD,

        Plaintiff,                        **ORDER**
                                                           2:24-cv-04336 (GRB) (JMW)

     -against-

COSTCO WHOLESALE CORPORATION,

        Defendant.
---------------------------------------------------------------X

**A P P E A R A N C E S:**

    Justine Uy
    Matt T. Gammons
    **Rosenbaum & Rosenbaum, P.C.**
    100 Wall Street, 15th Floor
    New York, NY 10005
    *Attorneys for Plaintiffs*

    Ian E. Hannon
    Sal F. DeLuca
    **Simmons Jannace DeLuca, LLP**
    43 Corporate Drive
    Hauppauge, NY 11788
    *Attorneys for Defendant*

**WICKS,** Magistrate Judge:

    In a personal injury action based upon a slip and fall resulting in injuries to the back, shoulder and knee, has plaintiff waived physician-patient privilege with respect to medical records for prior treatment for an eye condition? Before the Court is Defendant's motion to compel Plaintiff to produce medical records both before and after the accident that relate to treatment for her eye condition.

    Plaintiff Tracy Persaud ("Plaintiff") commenced this action against Defendant Costco Wholesale Corporation ("Defendant") asserting negligence that caused personal injuries she

1

sustained when she slipped and fell on a juice inside Defendant's store in Lawrence, New York on August 25, 2023. (*See generally* ECF No. 1.)  Plaintiff claims extensive injuries, including injuries particular to her lumbar spine, left knee, and left shoulder. (ECF No. 1-3 at p. 11-12.) Moreover, in her Rule 26(a)(1) Initial Disclosures, Plaintiff claims damages for pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. (*See* ECF No. 18, Ex. B.)

During the course of discovery, Defendant served a Demand for Authorizations ("Demand") on November 20, 2024 for Plaintiff's eye records after receiving Plaintiff's Medicaid records, which indicated Plaintiff received eye treatment for bilateral myopia and arcuate defects which purportedly affect her vision. (ECF No. 18 at p. 1.) Plaintiff objected to the Demand on December 12, 2024 on grounds that medical records for her eye diagnosis and treatment are wholly unrelated, and that Defendant failed to establish a necessary link between the injuries and the treatment she received for her eye. (*See id.* at pp. 1-2.)

Presently before the Court is Defendant's motion to compel the production of Plaintiff's pre- and post-accident eye records. (ECF No. 18.) Specifically, Defendant submits that "plaintiff's pre- and post-eye care records are both relevant to its defense and have been placed at issue by plaintiff's broad allegations of loss of enjoyment of life." (*Id.* at p. 3.) Though afforded an opportunity to respond (*see* Electronic Order dated December 22, 2024), Plaintiff did not oppose the motion.

For the following reasons, the Court **GRANTS** Defendant's motion to compel (ECF No. 18) the production of Plaintiff's pre- and post-accident eye care records.

# THE LEGAL FRAMEWORK

### A. *Scope of Discovery, Generally*

The basic discovery rule is found in Fed. R. Civ. P. 26:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Fed. R. Civ. P. 26(b)(1).

Information "is relevant if: '(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action.'" *Vaigasi v. Solow Mgmt. Corp.*, No. 11-CV-5088 (RMB)(HBP), 2016 WL 616386, at *11 (S.D.N.Y. Feb. 16, 2016) (quoting Fed. R. Evid. 401). Moreover, "[t]he party seeking the discovery must make a *prima facie* showing that the discovery sought is more than merely a fishing expedition." *Evans v. Calise*, No. 92-CV-8430 (PLK), 1994 WL 185696, at *1 (S.D.N.Y. May 12, 1994). To that end, the discovery sought by the parties must be, as stated by Rule 26, proportional to the needs of the case, taking into consideration such aspects as the importance of the issues, the amount in controversy, the parties' resources and access to the information sought, and the importance of the information sought to the asserted claims or defenses. *Sibley v. Choice Hotels Int'l*, No. 14-CV-634 (JS)(AYS), 2015 WL 9413101, at *2–3 (E.D.N.Y. Dec. 22, 2015).

### B. *The Physician-Patient Privilege and Scope of Waiver in a Personal Injury Action*

In a federal court sitting in diversity, the applicable state law concerning privilege applies. *See* Fed. R. Evid. 501 ("[In] a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); *Application of Am. Tobacco Co.*,

3

880 F.2d 1520, 1527 (2d Cir. 1989) ("[In] a diversity case the existence of a privilege is to be determined by reference to state law. . . ."). One of the privileges governed under New York law is the physician-privilege. *Madden v. Creative Services, Inc.*, 24 F.3d 394, 396 (2d Cir. 1994).

Indeed, New York has long recognized a physician-patient privilege which protects information acquired by a medical professional "in attending a patient in a professional capacity, and which is necessary to enable the medical professional to act in that capacity." *Haseman v. Gerber Products Co.*, Nos. 15-CV-2995 (MKB)(RER), 2018 WL 5651357, at *1 (E.D.N.Y. Oct. 09, 2018) (citing N.Y. C.P.L.R. § 4504(a) (McKinney 2018)). New York courts, however, find that a party waives the physician-patient privilege when the party "affirmatively [places] his or her physical or mental condition at issue." *Frawley v. City of New York*, 202 N.Y.S.3d 135, 137 (N.Y. App. Div. 2d Dep't 2023). In those situations, the party must then "provide duly executed and acknowledged written authorizations for the release of pertinent medical records." *Id.* (citing *DiLorenzo v. Toledano*, 136 N.Y.S.3d 905, 906 (N.Y. App. Div. 2d Dep't 2021)).

This at-issue waiver does not trigger a boundless and "wholesale" discovery of the "protected party's physical and mental condition." *Watt v. AvalonBay Communities*, 22-cv-07671 (JMW), 2023 WL 5179634, at *3 (E.D.N.Y. Aug. 11, 2023) (citing *Carter v. Fantauzzo*, 684 N.Y.S.2d 384, 385 (N.Y. App. Div. 4th Dep't 1998). Rather, the waiver of physician-patient privilege operates only as to those conditions that Plaintiff affirmatively placed in controversy. A party affirmatively places a condition in controversy where a party asserts the condition "either by way of counterclaim or to excuse the conduct complained of by the plaintiff" in the pending action. *Peterson v. Estate of Rozansky*, 97 N.Y.S.3d 724 (N.Y. App. Div. 2d Dep't, 2019) (quoting *Koump v. Smith*, 250 N.E.2d 857, 861 (N.Y. 1969)); *Fox v. Marshall*, 936 N.Y.S.2d 307, 309 (N.Y. App. Div. 2d Dep't 2012) (same). Similarly, a waiver of the physician-patient

4

privilege may occur when "the patient personally, or through his witnesses, either lay or medical, introduces testimony or documents concerning privileged information . . . It also results from failure to object to disclosure of privileged information." *See Palma v. Harnick*, 817 N.Y.S.2d 640, 642 (N.Y. App. Div. 2d Dep't 2006) (citation omitted) (internal marks omitted).

Once a party places the medical condition at issue in controversy, the party "has waived any physician-patient privilege that may attach to the records of that condition . . . ." *Watt*, 2023 WL 5179634, at *2 (citing *Connolly v. Peerless Ins. Co.*, No. 10-CV-789 (ADS)(WDW), 2011 WL 13305348, at *5 (Apr. 4, 2011)). "To this end, the Court considers, *inter alia*, the allegations in the pleadings and the injuries claimed", *id.* at *3, in addition to the damages asserted. *See, e.g.*, *Li v. Peck*, No. 3:21-CV-996 (VAB), 2024 WL 1704854, at *9 (D. Conn. Apr. 19, 2024) (granting the motion to compel answers to interrogatories when there was "no basis to deny access" to medical history "squarely at issue" and where damages sought included loss of enjoyment of life); *Vargas v. U.S.*, 401 F. Supp. 3d 346, 347 (E.D.N.Y. 2018) (holding once the plaintiff placed the medical condition at issue, the right to prevent disclosure had been waived and defendant may be entitled to seek information pertaining to conditions relevant to the damages claimed); *Cordero v. U.S.*, No. 19 Civ. 1320 (SLC), 2021 WL 568079, at *2 (S.D.N.Y. Feb. 2, 2016) ("In putting his medical condition at issue, [Plaintiff] waived his right to privacy in his medical records [when claiming damages for loss of enjoyment of life].").

Upon waiver of the privilege, the party seeking discovery bears the burden of establishing relevance. *See Watt*, 2023 WL 5179634, at *3; *see also Ravago Americas v. Dmytruk*, No. 3:18-cv-2054 (AWT), 2019 WL 11638876, at *1 (D. Conn. Mar. 3, 2019) (citing *Mandell v. The Maxon Co., Inc.*, No. 06-CV-460 (RWS), 2007 WL 3022552, at *1 (S.D.N.Y. Oct. 16, 2007)) (finding the burden of establishing relevance is borne by the party seeking discovery). That

remains true even when the information sought from the adverse party are medical records. *See Budano v. Gurdon*, 948 N.Y.S.2d 612, 615 (N.Y. App. Div. 1st Dep't 2013) ("The burden of proving that a party's mental or physical condition is in controversy, for purposes of obtaining relevant hospital records, is on the party seeking the records."). Once the initial burden of establishing the condition "is at issue" has been met, the burden shifts to the party resisting discovery to explain why the information sought should nevertheless remain privileged.[1] *See Watt*, 2023 WL 5179634, at *3 (citing *Palma*, 817 N.Y.S.2d at 642).

With these principles in mind, the Court turns to the instant dispute.

## DISCUSSION

Plaintiff complains of substantial injuries of the lumbar spine, as well as to the left knee and shoulder. (ECF No. 1-3 at pp. 4-5). Plaintiff subsequently submitted, at the request of Defendant, certain medical records related to those injuries, after Plaintiff, in her Rule 26(a)(1) Initial Disclosures, claimed damages for pain, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. (*See* ECF No. 18, Ex. B.). Included within those medical records were Medicaid statements indicating Plaintiff received treatment for arcuate defects and bilateral myopia, a condition of the eyes which results in near-sightedness.[2] (*See* ECF No. 18 at p. 1). It is here where the parties sharply disagree as to whether the submission of these eye treatment statements, as a part of the broader disclosure, therefore requires Plaintiff to subsequently disclose her pre- and post-accident eye care records.

---

[1] This Court is left with no such opportunity to consider arguments for keeping Plaintiff's eye treatment records privileged because Plaintiff failed to oppose Defendant's motion. *See Vargas*, 401 F. Supp. 3d at 347 (noting that, among other reasons, because "Plaintiff cites not a single case for her position and offers no basis to limit the requests" the motion to compel was summarily granted).

[2] *Myopia (Nearsightedness)*, CLEVELAND CLINIC (last visited Jan. 28, 2025), https://my.clevelandclinic.org/health/diseases/8579-myopia-nearsightedness

1. ***Plaintiff Affirmatively Put Her Condition "At Issue"***

Has Plaintiff affirmatively put her eye condition "at issue" by submitting her medial statements which indicated she received treatment for several eye issues following her slip and fall?

In *Keleman*, the court affirmed the decision to compel plaintiff, who alleged that a defective design of a treadmill caused her injuries, to answer questions concerning certain pre-existing medical conditions. *See Keleman v. Quinton Fitness Equipment*, 805 N.Y.S.2d 82 (N.Y. App. Div. 1st Dep't 2005). There, plaintiff's medical records indicated that she had a pre-existing condition pertaining to her back and eyesight. *See id.* at 83. Notably, these records "repeatedly referred to such conditions in the treatment that plaintiff received for her ankle and back," thereby placing those pre-existing conditions "at issue" to which further disclosure was warranted. *See id.* As to her eyesight specifically, the court determined that her pre-existing condition "may have affected her hand-eye coordination and ability to operate the treadmill's control panel safely." *Id.* Thus, privilege was waived by the very release of those medical records documenting the pre-existing condition, as impacted eyesight went directly to plaintiff's allegations of defective design. *See id.*

The rationale of *Keleman* applies equally here. Plaintiff's eye condition is at issue as it is a condition that may excuse defendant's conduct at the time of the accident. *See* Verified Answer (ECF No. 1-2, at p. 5 (second affirmative defense)). Just as the records of poor eyesight were relevant in *Keleman*, Plaintiff here placed her eye condition at issue through her submitted disclosures indicating she has received treatment for her eyesight issues—issues that may excuse the liability as to Defendant's alleged negligent conduct. *See Peterson*, 97 N.Y.S.3d at 728 (concluding that a condition at the time of an accident is placed "in controversy" where a

7

defendant seeks to excuse its conduct, through the particular condition, at the time of the accident).

Plaintiff asserts that Defendant failed to adequately "set up barriers or warnings" and that a liquid substance had accumulated in the aisle where the fall occurred. (ECF No. 18-1 at p. 3-4). Moreover, she contends that Defendant failed to place "mats or towels on the floor," an alternative means to alert that the floor was dangerously slippery to unsuspecting customers like Plaintiff. (ECF No. 18-1 at 4). To some extent, these allegations imply that the liquid could not be seen on the floor, and that Plaintiff would have had no way of knowing the floor was otherwise unsafe to walk upon. But it is also Plaintiff who has disclosed that after the injury sustained on August 25, 2023, she was subsequently treated for her nearsightedness in November of 2024. (ECF No. 18 at p. 1.) Therefore, "by virtue" of Plaintiff's allegations, she has placed the conditions of her eyesight "at issue." *See Watt*, 2023 WL 5179634, at *3; *Keleman*, 805 N.Y.S.2d at 83; *Deckler v. Olander*, No. 3:12-CV-277 (WWE), 2013 WL 1914485, at *1 (D. Conn. May 08, 2013) ("At a minimum, based on the plaintiff's allegations, defendants are entitled to know the state of the plaintiff's health prior to the accident."); *Vargas*, 401 F.Supp.3d at 347 ("There can be no dispute that Plaintiff has put her medical condition and her medical history at issue; she seeks damages for injuries suffered following an accident she alleges was caused by the Defendant") (internal citations omitted).

2. *<u>Are the Records Sought Relevant and Proportional?</u>*

Though the condition of the Plaintiff's eyesight is "at issue," that does not in of itself satisfy whether the records sought are "relevant to any party's claim or defense" and thus "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). These two requirements "go hand in hand," and thus "the more relevant the information sought is, the less likely the Court

8

would find the subject discovery disproportionate." *Watt*, 2023 WL 5179634, at *3 (citing *New Falls Corp. v. Soni*, No. 16-CV-6805 (ADS)(AKT), 2020 WL 2836787, at *2 (E.D.N.Y. May 29, 2020). That burden of proving relevance and proportionality of the documents or information sought must still be satisfied by the party seeking discovery. *See Watt*, 2023 WL 5179634, at *4.

      Here, the records sought by Defendant are, first and foremost, relevant and proportional to the needs of the case because the injury was caused, at least in part according to Defendant, as a result of Plaintiff's alleged inability to see the substance upon which she slipped and fell. *Melendez v. Falls*, No. No. 06-CV-6198CJS, 2010 WL 811337, *2 (W.D.N.Y. Mar. 3, 2010) (finding defendants were entitled to inspect records "that reveal medical conditions or injuries . . . . that could have contributed to or aggravated the injuries [plaintiff] claims resulted from th[e] incident."); *but see Watt*, 2023 WL 5179634, at *4 (limiting discovery only to the conditions both at issue and actually relevant after noting that defendant did not totally satisfy this burden when seeking to compel disclosure of medical records of a condition "not at issue . . . . nor relevant to any of the Defendant's claims or defenses.").

      Furthermore, these medical records are relevant and proportional to the damages Plaintiff seeks, including for loss of enjoyment of life. (ECF No. 18-1, Ex. A, at p. 4). For instance, in *Cordero*, the court granted defendant's motion to compel plaintiff to provide medical releases prior to defendant's car accident that caused injuries to plaintiff's neck and back, resulting in plaintiff seeking damages for, *inter alia*, past and future mental pain, past and future physical pain and suffering, and for loss of enjoyment of life. 2021 WL 568079, at *1. There, defendant argued that "[g]iven the broad scope of asserted damages, [it] is entitled to discovery concerning [Cordero's] overall health, and previous injuries and conditions that may have caused or contributed to this alleged pain and suffering, and loss of enjoyment of life (both pre- and post-

9

accident)." *Id.* The court, in agreeing with this argument, reasoned that not only did plaintiff put his medical condition at issue by providing medical authorizations for its prior conditions, but also the defendant was "certainly entitled to explore whether the injuries [plaintiff] claims resulted from [defendant's] conduct were in fact caused by someone else *or resulted from some pre-existing condition.*" *Id.* at *2 (quoting *Vargas*, 401 F. Supp. 3d at 347-48) (emphasis added). Moreover, the court determined that the medical releases for prior medial conditions which may have impacted the cause of the injuries were all relevant to "the broad categories of damages" plaintiff sought. *Id.* at *3.

Here, like in *Cordero*, Plaintiff asserts not only damages for the loss of enjoyment of life, but also a broad range of damages including for "pain, suffering, inconvenience, past, present, and future medical bills." (ECF No. 18-2 at p. 3). Additionally, Plaintiff included in her medical statements her post-accident treatment of her nearsightedness. (ECF No. 18-2 at p. 2). Accordingly, as in *Cordero*, Defendant here ought to be entitled to discover the scope of Plaintiff's "overall health and previous injuries and conditions" that have led to her claimed damages, like loss of enjoyment of life. *See Pokigo v. Target Corp.*, No. 13–CV–722A(SR), 2014 WL 6885905, at *2 (W.D.N.Y. Dec. 8, 2014) ("[P]laintiff has significant preexisting and ongoing mental and physical conditions which can reasonably be expected to impact her claim for damages resulting from this incident, [including loss of enjoyment of life,] defendant is entitled to full discovery regarding plaintiff's treatment history."); *see also Montalto*, 978 N.Y.S.2d 891 (N.Y. App. Div. 2nd Dep't 2014) ("Here, the plaintiffs alleged that, as a result of the defendants' malpractice, [] plaintiff . . . suffered, among other injuries, brain damage, an inability to perform activities of daily living without assistance, and a loss of enjoyment of life. Based upon these allegations, records of psychological treatment that the injured plaintiff may

10

have received prior to or subsequent to the date of the alleged malpractice are material and necessary for an accurate assessment of her damages.").

Indeed, the party seeking discovery should be "entitled to review records showing the nature and severity of the [. . . .] prior medical conditions which may have an impact upon the amount of damages, if any, recoverable for a claim of loss of enjoyment of life." *O'Brien v. Vill. of Babylon*, 60 N.Y.S.3d 92, 94 (N.Y. App. Div. 2d Dep't 2017) (quoting *Montalto*, 978 N.Y.S.2d at 891). "That is, one cannot sue for an injury on the one hand and on the other, deny access to what could be relevant prior medical history or preconditions." *Watt*, 2023 WL 5179634, at *2.

Here, Plaintiff claims damages for loss of enjoyment of life. Defendant, therefore, should be entitled to review medical conditions that may have impacted her way of life prior to the accident, and following the accident. *See Peck*, 2024 WL 1704854, at *15 (determining plaintiff, who sought damages for loss of enjoyment of life, could not claim damages arising from injuries and then refuse to produce records of those alleged injuries). Therefore, with respect to the eye records sought by the Defendant, they are both relevant and proportional to the needs of the case. These records could provide a more accurate assessment of the damages sought by Plaintiff for a condition placed "at issue" by her and who disclosed only that treatment for nearsightedness occurred after her injury was sustained.

## **CONCLUSION**

For the reasons stated herein, the Court **GRANTS** Defendant's motion to compel (ECF No. 18) the production of Plaintiff's pre- and post-accident eye care records.

Dated: Central Islip, New York
January 30, 2025

**S O  O R D E R E D:**

*/S/ James M. Wicks*
JAMES M. WICKS
United States Magistrate Judge